## Richmond.

## JOHN RICHARDSON V. COMMONWEALTH.

### November 17, 1921.

1. JUDGMENTS AND DECREES—*Alteration or Amendment After the Adjournment of the Term—Suspension of Sentence.*—The doctrine that a court has no power or authority, after the adjournment of the term, to amend a final judgment or order, because it becomes irrevocable upon such final adjournment, is fully recognized and enforced in Virginia. But the doctrine has no application to an order suspending sentence upon accused and discharging him from custody until the further order of the court. When the execution of a sentence is thus suspended, under Acts 1918, ch. 349, the case remains pending and the court does not thereby lose its control over the accused or his case.

2. SENTENCE—*Suspension of Sentence—Common Law.*—The weight of authority appears to be that, under the common law, courts do not possess the power to delay the imposition or execution of sentences for crime, except temporarily, as, for instance, in order to give time for motions for new trial, writs of error, or to determine the precise sentence to be imposed.

3. SENTENCE—*Suspension of Sentence—Constitutionality of—Statutes.*—Statutes, such as Acts of 1918, ch. 349, which confer upon the trial court power to suspend sentences, are constitutional.

4. SUSPENSION OF SENTENCE—*Definition.*—Suspension of sentence means either delay in the imposition of a sentence for crime or the staying of execution of the sentence imposed. It is not a pardon, excuse, immunity, or relief, from the punishment, but a mere suspension, or postponement, of its execution.

5. SUSPENSION OF SENTENCE—*Constitutionality of Acts 1918, ch. 349—Pardoning Power.*—Acts 1918, ch. 349, conferring power upon the trial courts to suspend sentences does not contravene the constitutional provisions vesting the pardoning power in the executive.

6. SUSPENSION OF SENTENCE—*Contract by Court with Accused to Suspend Sentence.*—The judge of a trial court may not enter into

a binding agreement with the prisoner to excuse him forever from the penalties of his crime.    When a trial judge suspends a sentence he does not make a contract with the accused, but only extends to him the opportunity which the State affords him to repent and reform. It is the free gift of the Commonwealth, and not a contract to relieve him from the punishment which fits his crime.

7.   SUSPENSION OF SENTENCE—*Agreement with Commonwealth's Attorney—Question Must be Determined by Judge.*—The attorney for the Commonwealth may properly confer with the accused and his attorney, and in appropriate cases agree to recommend to the judge the exercise of his power to suspend sentence, but the appropriate action must be at last determined by the judge himself, though he will generally adopt such recommendation.

8.   SUSPENSION OF SENTENCE—*Agreement with Commonwealth's Attorney—Question Must be Determined by Judge.*—Courts ordained to administer justice, and charged with that duty, cannot properly make terms with crime, though under Acts of 1918, ch. 349, they may, as a matter of grace, postpone or withhold the imposition of the prescribed penalty for the reasons indicated in the statute and upon conditions thereby prescribed.  The attorneys for the Commonwealth can make no contract with an accused person which will bind the judge, and the judge can make no agreement which will bind either himself or his successors in office.    When the accused pleads guilty, he can thereafter only ask for mercy, and if he receives it, it comes to him as a gift and not by purchase.

9.   SUSPENSION OF SENTENCE—*Acts 1918, ch. 349—Construction.*— Acts 1918, ch. 349, is highly remedial and should be liberally construed, but it is most important that the General Assembly shall clarify it by amendment.

10.   SUSPENSION OF SENTENCE—*Acts 1918, ch. 349—Limitation Upon the Period Within Which the Suspension Order Can be Revoked.* —Acts 1918, ch. 349, provides that the court may revoke the suspension of sentence "at any time within the probation period, or within the maximum period for which the defendant might originally have been sentenced to be imprisoned." The purpose of this clause to limit the period within which the suspension order can be revoked is manifest, and if the court fails to prescribe the period of probation in the suspending order, then the statute operates, determines the period, and limits the jurisdiction of the court to revoke the suspension to the maximum period for which the accused could originally have been imprisoned.

Error to a judgment of the Corporation Court of the city of Radford.

*Reversed.*

The opinion states the case.

*R. L. Jordan* and *John S. Draper, Jr.*, for the plaintiff in error.

*John R. Saunders, Attorney-General, J. D. Hank, Jr., Assistant Attorney-General,* and *Leon M. Bazile, Second Assistant Attorney-General,* for the Commonwealth.

PRENTIS, J., delivered the opinion of the court.

John W. Richardson, who was prosecuted under the name of John Richardson, assigns error in the final judgment of the trial court committing him to jail for thirty days for a violation of the prohibition statute.

These facts appear:  On November 10, 1919, the accused having pleaded guilty, the following order was entered:

"This day the Commonwealth by its attorney and the accused by his attorney, by and with the consent of the attorney for the Commonwealth and the accused pleaded guilty to the indictment against him; whereupon the court imposed a fine of $50.00 and fixed the period of his confinement in this city jail at thirty days: But the court doth suspend said jail sentence, during good behavior of the accused, and upon the payment of said fine and the taxable costs of this prosecution, the accused is discharged from custody until the further order of this court."

Thereafter, he was indicted in the Circuit Court of the county of Pulaski for unlawfully transporting ardent spirits, to which charge he also pleaded guilty on September 14, 1920, and a fine of $50 was imposed on him therefor.  Following this second conviction, a rule was issued in the Corporation Court of the city of Radford on December 14, 1921,

requiring him to show cause why the suspension of execution of sentence under the original conviction of November 10,. 1919, should not be revoked and he be required to serve thirty days in jail in accordance with the original conviction. To this rule there was an answer, denying the facts suggested in the rule, and a demurrer to the evidence. Thereupon the court, without passing upon any of the questions thereby raised, entered the following order February 14, 1921:

"This day came again the Commonwealth by its attorney, and the defendant John W. Richardson, by his attorney, and the court without passing upon the sufficiency of the evidence submitted by the Commonwealth in support of the rule and the motion for commitment thereunder; upon such evidence; and without passing upon the sufficiency of the answer of John W. Richardson to the rule, and without passing upon the demurrer to the evidence offered in support of the rule, which questions and motions were submitted to the Corporation Court of the city of Radford, Virginia, at its December, 1920, term; is of the opinion and doth decide that the court was in error in suspending the jail sentence imposed upon the defendant, John W. Richardson, by its order of November 10, 1919, and that the court was without jurisdiction or power to suspend said jail sentence fixed in said order of November 10, 1919, the court, therefore, doth now annul and set aside so much of the order entered November 10, 1919, as suspended the jail sentence provided for in said order; and doth now order, direct and command the sergeant of the city of Radford, Virginia, to take charge of the defendant, John W. Richardson, and commit him to the jail of the city of Radford, Virginia, there to serve a period of thirty days, the time fixed and provided in the order of November 10 1919, to which ruling of the court the defendant excepts."

To this order this writ of error was allowed.

It is certified as a part of the facts that upon the first indictment there was a jury trial at the October, 1919, term of court, at which trial the jury disagreed, and at the succeeding November term the accused "agreed by and with the Commonwealth's attorney, and the consent of the court to be obtained, that if the court would suspend the jail sentence attached to a conviction under. said indictment, and would impose only the minimum fine of fifty dollars, that he, the said John W. Richardson, would plead guilty to the indictment. This agreement was in good faith entered into between the defendant and the Commonwealth's attorney, and the agreement was approved by the court, in that the court consented to impose the minimum fine and suspend the said jail sentence. Upon the agreement and upon those conditions, the said John W. Richardson withdrew his former plea of 'not guilty' and pleaded guilty to the indictment upon which he had once been tried, and upon which trial a jury had disagreed as to whether he was guilty or not."

It is observed that in the judgment of February 24, 1921, committing the accused to jail, the court bases its action upon the opinion that it was without jurisdiction or power to suspend the execution of the jail sentence imposed by the order of November 10, 1919, and for that reason only annulled and set aside the suspending order.

[1] Our attention is directed to the lack of power or authority in a court, after the adjournment of the term, to alter or amend a final judgment or order, because it becomes irrevocable upon such final adjournment, and it is claimed that for this reason the court had no jurisdiction or power to revoke the suspending order and commit the accused to jail under the original conviction. This assignment is without merit, not because the doctrine is not fully recognized and enforced in Virginia, but because in this case there was no final judgment, and the execution of the sentence

was suspended and the accused discharged from custody until the further order of the court. When the execution of a sentence is thus suspended, under the Virginia statute, the case remains pending and the court does not thereby lose its control over the accused or his case. Indeed, the statute presently to be quoted expressly confers upon the court in such cases ample jurisdiction over the accused and control over such orders, with power to revoke them, and to require such suspended sentences to be fully executed, if exercised within the period prescribed by law.

The question presented depends upon the proper construction of section 2 of the act approved March 16, 1918 (Laws 1918, Chap. 349), providing for probation and suspension of sentences in criminal and juvenile courts. This section reads thus:

"After a plea or a verdict of guilty in any court having jurisdiction to hear and determine the offense with which the prisoner at the bar is charged, if there be circumstances in mitigation of the offense, and if it appear compatible with the public interest, or in any case after a child has been declared delinquent or dependent, the court may suspend the imposition or the execution of sentence, or commitment and may also place the defendant on probation under the supervision of a probation officer, during good behavior, for such time and under such conditions of probation as the court shall determine. The court may subsequently increase or decrease the probation period and may revoke or modify any condition of probation. While on probation the defendant may be required to pay in one or several sums a fine imposed at the time of being placed on probation, or may be required to make restitution or reparation to the aggrieved party or parties for actual damages or loss caused by the offense for which conviction was had, or may be required to provide for the support of his wife or others for whose support he may be legally responsible.

"The court may revoke the suspension of sentence and cause the defendant to be arrested and brought before the court at any time within the probation period, or within the maximum period for which the defendant might originally have been sentenced to be imprisoned, whereupon, in case the imposition of sentence has been suspended, the court may pronounce whatever sentence might have been originally imposed; and in case the execution of the sentence has been suspended, the original sentence shall be in full force and effect, and the time of probation shall not be taken into account to diminish the original sentence. In the event that any person placed on probation shall leave the jurisdiction of the court without the consent of the judge, or having obtained leave to remove to another locality violates any of the terms of his probation, he may be apprehended and returned to said court and dealt with as provided above."

[2-5] The power of courts to suspend sentence, this phrase being frequently employed as meaning either delay in the imposition of a sentence for crime or the staying of execution of the sentence imposed, has been much discussed. The weight of authority appears to be that, under the common law, courts do not possess the power to delay the imposition or execution of sentences for crime, except temporarily, as for instance, in order to give time for motions for new trial, writs of error, or to determine the precise sentence to be imposed. It is, however, generally held that statutes which confer such power are valid, and that they do not contravene the constitutional provisions vesting the pardoning power in the executive. Among the cases upholding the validity of such statutes are, *People ex rel. Forsyth* v. *Court of Sessions*, 141 N. Y. 288, 36 N. E. 386, 23 L. R. A. 856, 15 Am. Cr. Rep. 675; *People ex rel. Sullivan* v. *Flynn*, 55 Misc. Rep. 639, 106 N. Y. Supp. 925; *People* v. *Stickle*, 156 Mich. 557, 121 N. W. 497; *State* v. *Mallahan*, 65 Wash. 287,

118 Pac. 42; *Ex parte Giannini,* 18 Cal. App. 166, 122 Pac. 831; *Belden* v. *Hugo,* 88 Conn. 500, 91 Atl. 369, 8 R. C. L. 247, *et seq.;* note to *State* v. *Abbott,* 87 S. C. 466, 70 S. E. 6, 33 L. R. A. (N. S.) 116; *Fuller* v. *Mississippi* (Miss.), 57 So. 6, 39 L. R. A. (N. S.) 248; note to *Re Hart,* 29 N. D. 38, 149 N. W. 568, L. R. A. 1915C, 1171.

In *Ex parte United States,* 242 U. S. 27, 37 Sup. Ct. 72, 61 L. Ed. 129, L. R. A. 1917E, 1178, it is held that in the absence of statutory authority, the Federal courts have no power to suspend the execution of sentences indefinitely, but the power of Congress to confer that authority by statute is expressly recognized.

In this State the matter is regulated by statute, and nothing has been suggested which leads us to doubt the constitutionality of such statutes. Code 1919, section 4925, expressly recognizes the power of the General Assembly to enact them in this language: "Except where authorized by statute, no court, judge or justice shall suspend the entry of execution or judgment in any criminal case."

Possibly the idea that such statutes constitute an invasion of the pardoning power of the governor is based upon an erroneous view of the true effect of suspending execution of a sentence. By the very term used it is not a pardon, excuse, immunity, or relief, from the punishment, but a mere suspension, or postponement, of its execution.

[6-8] Much of the argument in this case is based upon the assumption that the judge of a trial court may enter into a binding agreement with the prisoner to excuse him forever from the penalties of his crime. We think this a misconception, and that if judges are in the habit of making such contracts or bargains with convicted persons, the practice should be discontinued. The Commonwealth, in the administration of the criminal law, desires the reformation of the criminal, and in the promotion of that purpose authorizes the probation of certain criminals and the suspension

of the imposition or execution of their sentences, so that they may not be deprived of their liberty and the power to earn their subsistence, or be morally corrupted by association with hardened criminals frequently found in the jails, but may take their places and perform some useful work in the community. When a trial judge suspends a sentence, however, he does not make a contract with the accused, but only extends to him the opportunity which the State affords him to repent and reform. It is the free gift of the Commonwealth, and not a contract to relieve him from the punishment which fits his crime. In such cases the attorney for the Commonwealth may properly confer with the accused and his attorney, and in appropriate cases agree to recommend to the judge the exercise of such leniency, but the appropriate action must be at last determined by the judge himself, though he will generally adopt such recommendation as satisfying the ends of justice. By this statute the Commonwealth, in its benevolent effort to reform its criminals, extends, through the trial court judges, to those overtaken in their faults, a mercy which is free, but which does not rest upon contract. Courts ordained to administer justice, and charged with that duty, cannot properly make terms with crime, though under this statute they may as a matter of grace, postpone or withhold the imposition of the prescribed penalty for the reasons indicated in the statute and upon conditions thereby prescribed. The attorneys for the Commonwealth can make no contract with an accused person which will bind the judge, and the judge can make no agreement which will bind either himself or his successors in office. When the accused pleads guilty, he can thereafter only ask for mercy, and if he receives it, it comes to him as a gift and not by purchase.

It is also urged in this case that the commitment of the accused to jail in this proceeding is invalid because the maximum period for which he might originally have been

sentenced had elapsed before the rule was issued, and that, therefore, the court had no power under the statute to revoke the suspension of sentence.  This presents a more difficult question.

[9, 10] The statute is highly remedial and should be liberally construed, but it is most important that the General Assembly shall clarify it by amendment.  Clarifying its obscurities as best we can, it is manifest that the authority either to suspend the imposition or the execution of sentences is committed to the trial court judges.  The draftsman of the act appears to have had in mind that in the discretion of the judge there might be two alternatives: (1) That the convicted person might be placed on probation—that is, discharged on condition that he would be of good behavior, either with or without supervision and without any express limitation of the period during which this probation should continue; (2) There might be such a suspension of the sentence either with or without the supervision of a probation officer for a definite period until the further order of the court.  The court is thereby given ample power, not only to determine the conditions to be imposed in each case, but is expressly given power to revoke the suspension and cause the defendant to be arrested and again brought before the court for punishment.  This ample power of revocation, however, with its limitations, are expressed in the statute in these words:  "The court may revoke the suspension of sentence and cause the defendant to be arrested and brought before the court at any time within the probation period, or within the maximum period for which the defendant might originally have been sentenced to be imprisoned."

While the precise meaning of this clause is not perfectly apparent, its purpose to limit the period within which the suspension order can be revoked is manifest.  It is clear that within such limited period the court is expressly authorized to revoke the suspension and impose the penalty,

but not thereafter. This prescribed and limited period is expressed in the alternative—that is, the court may revoke the suspension either at any time within the probation period, or within the maximum period for which the defendant might originally have been sentenced to imprisonment. The clause would more clearly express its meaning if the word "or" were followed by the words, "if no probation period has been prescribed then." With this interpolation the meaning of the statute would be perfectly clear. The legislature clearly could not have intended to make the jurisdiction of the trial court to revoke the suspension a matter of uncertainty in any particular case. The intention was to prescribe and limit the power of the court. As in this case, the trial court did not prescribe a definite period during which the suspension of the sentence should continue, unless we adopt the conclusion suggested, we would be driven to conclude that the court might retain its jurisdiction over the defendant and hold him subject to its order indefinitely. While the court may fix the period of probation, a careful consideration of the language used leads us to the conclusion that in those cases in which the court fails to prescribe such period of probation definitely, the alternative clause of the statute operates and itself limits the power of revocation to "the maximum period for which the defendant might originally have been sentenced to be imprisoned."

The maximum period for which the accused could be imprisoned for this crime appears to be six months. In this case it appears that more than six months had elapsed after the original suspension of the sentence, November 10, 1919, and before the date of the issuance of the rule, December 14, 1920. As this maximum period had expired before the rule was issued, we are of opinion that the court exceeded its power in assuming further jurisdiction of the case. At any time within six months, under the statute, the court

had plenary power to revoke the order of suspension and impose the penalty of imprisonment, but not after the expiration of that maximum period.

If the court fails to prescribe the period of probation in the suspending order, then the statute operates, determines the period and limits the jurisdiction of the court to revoke the suspension to the maximum period for which the accused could originally have been imprisoned.

It follows, therefore, that we think the court erred in taking jurisdiction of this case after the expiration of the six months from the date when the sentence was suspended. The order will therefore be reversed, and the rule dismissed.

*Reversed.*