PRESENT:  Lemons, C.J., Goodwyn, Mims, Powell, Kelsey, and Chafin, JJ., and Millette, S.J.

DOROTHY ELIZABETH CILWA

OPINION BY
v.  Record No. 180885                                    JUSTICE D. ARTHUR KELSEY
                                                         DECEMBER 12, 2019

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Brett A. Kassabian, Judge


Dorothy Elizabeth Cilwa appeals a decision of the Court of Appeals affirming the trial

court's revocation of her suspended sentence in a criminal case.  Cilwa contends that the trial

court's final revocation order relied upon an earlier order that was void ab initio.  We disagree

and affirm.

I.

In March 2008, Cilwa pleaded guilty to grand larceny and was sentenced to three years of

incarceration with all three years suspended on the condition of good behavior for one year and

successful completion of one year of supervised probation.  Five days after her sentencing

hearing, Cilwa committed a new criminal offense.  In August 2008, the trial court found her in

violation of the terms of her probation.  Rather than imposing any portion of her suspended

sentence, the court continued Cilwa on supervised probation for another one-year period

beginning on August 14, 2008.

In June 2009, the probation officer informed the court that Cilwa had been arrested and

had been charged with two new felonies, and the court issued a bench warrant for Cilwa's arrest.

Cilwa responded by executing a letter prepared by her probation officer stating that she "agree[d]

to voluntarily extend [her] probation **indefinitely** beyond the scheduled termination date of

August 14, 2009, in order to complete inpatient substance abuse treatment and to allow time for

disposition of [her] pending felony charge[s]." J.A. at 20 (emphasis in original). She acknowledged that she had a right to legal counsel and to a hearing but "waived[d] these rights." *Id.* The court withdrew the bench warrant and held the case in abeyance.

On September 15, 2009, the Commonwealth asked the court to enter an order extending Cilwa's probation indefinitely until "substance abuse treatment and aftercare are completed and pending charges are disposed of." *Id.* at 21. Consistent with the earlier agreed-upon disposition, the court entered an order stating that, as of September 16, 2009, "probation in the above case is hereby extended for Indefinitely [sic], or until further order by the Court." *Id.* Approximately two weeks later, Cilwa was arrested for another felony offense. The court issued a bench warrant for her arrest and scheduled a revocation hearing to address the June and September 2009 charges.

At the revocation hearing in December 2009, the court found that Cilwa had violated the terms of her supervised probation. In its corresponding January 2010 revocation order, the court recited its prior rulings, including its September 2009 order, and stated that Cilwa's "period of supervised probation [was] extended indefinitely in order for [her] to complete residential drug treatment and aftercare and time for disposition of her pending charges." *Id.* at 31. The court declined to order incarceration and instead directed her to another "residential substance abuse treatment facility" and ordered that she "remain under the same terms and conditions of supervised probation." *Id.*

In December 2011, Cilwa overdosed on drugs and was discharged from a substance-abuse-treatment program. The court issued a bench warrant for Cilwa to secure her appearance at another revocation hearing. After multiple continuances, during which Cilwa continually improved in her addiction treatment, the case went before the court in December 2012. The

court dismissed the bench warrant, and later, in February 2013, Cilwa signed a "Conditions of Probation Supervision" form noting that at her December 2012 hearing, the court had again placed her on indefinite supervised probation. *Id.* at 66-67. She also successfully completed a substance-abuse-treatment program in January 2013.

In March 2013, Cilwa's probation officer advised the court that Cilwa had been arrested for a new felony offense and had continued to abuse drugs. The court took no action until after Cilwa was arrested in December 2014 for an additional felony, multiple misdemeanors, and a driving offense. On March 27, 2015, at the revocation hearing to address her charges, Cilwa argued for the first time that the September 2009 order imposing indefinite probation was void ab initio. Cilwa argued in the alternative that under general contract principles, her supervised probation had automatically ended when she had completed the substance-abuse-treatment program in 2013.

The trial court rejected both of Cilwa's arguments. First, the court found that even if it had erred in extending Cilwa's probation indefinitely, this error would render the September 2009 order voidable but not void ab initio. Cilwa had not appealed this order, and thus, she could not collaterally attack it years later. Second, the court was unpersuaded by Cilwa's contract argument. The September 2009 order, the court held, had not created a "condition subsequent" triggered by Cilwa's short-lived success in one of her several substance-abuse-treatment programs. *Id.* at 84. The court's order, which reflected its intent, was plain. The order "simply extended [Cilwa's probation] indefinitely." *Id.* at 85.

After the court had rejected Cilwa's collateral challenge to the September 2009 order, Cilwa admitted the new charges against her. The court found her in violation of her probation, revoked 90 days of her 3-year suspended sentence, and terminated her supervised probation.

3

Cilwa appealed, but the Court of Appeals held in an unpublished order that the trial court did not err because the January 2010 order had extended Cilwa's probation indefinitely even if the September 2009 order, for whatever reason, had not. The Court of Appeals also rejected Cilwa's contract argument that her probation had terminated automatically when she had completed a substance-abuse-treatment program in January 2013.

## II.

On appeal to us, Cilwa makes two arguments. First, she argues that the September 2009 order was void ab initio because the trial court lacked subject matter jurisdiction to enter it, and consequently, the January 2010 order was void as well. Second, she argues that under contract principles, her probation had terminated automatically when she had completed her substance-abuse-treatment program in January 2013, which was long before the trial court entered its final revocation order.[1] We find no merit in either argument.

### A. THE SEPTEMBER 2009 ORDER

Cilwa contends that the trial court entered the September 2009 order during a "lapsed" period of subject matter jurisdiction over probation in this case. *See* Appellant's Br. at 10-11. She draws this conclusion by reasoning that Code § 19.2-304 only allows a court to extend a probation period before that period expires and that Code § 19.2-306 only allows a court to extend a probation period as a consequence of a revocation finding. Neither of these conditions, Cilwa argues, existed at the time that the court entered the September 2009 order.

---

[1] In her first assignment of error, Cilwa claims that the trial court lacked both personal and subject matter jurisdiction over her. In her brief on appeal, however, she abandons the personal jurisdiction argument. *See* Appellant's Br. at 10 ("In this case the trial court retained personal jurisdiction over Ms. Cilwa, and that is not at issue."); *id.* at 11 (conceding that "the court retained personal jurisdiction over Ms. Cilwa").

4

1.

We begin our jurisdictional analysis where Cilwa ends hers — with the proposition that a judicial order can be deemed void ab initio, sometimes even years after it has been entered. In most instances, "whether an alleged error by a trial court renders its order void ab initio or merely voidable turns on the subtle, but crucial, distinction deeply embedded in Virginia law" between two very different but semantically similar concepts: subject matter jurisdiction and, for lack of a better expression, active jurisdiction. *See Jones v. Commonwealth*, 293 Va. 29, 46 (2017).

"Subject-matter jurisdiction is unique." *Watson v. Commonwealth*, 297 Va. 347, 352 (2019). It involves the judicial "power to adjudicate a case." *Pure Presbyterian Church of Wash. v. Grace of God Presbyterian Church*, 296 Va. 42, 49 (2018) (citation omitted). "Jurisdiction of the subject matter can only be acquired by virtue of the Constitution or of some statute," *id.* at 56 (citation omitted), and it "refers to a court's power to adjudicate a class of cases or controversies," *In re Commonwealth*, 278 Va. 1, 11 (2009) (citation omitted). The parties cannot waive the absence of subject matter jurisdiction or confer it upon a court by their consent. *Watson*, 297 Va. at 352. If a court enters an order outside of its subject matter jurisdiction, the order can be set aside the day after its entry or a century later. In the eyes of the law, such an order is not merely an erroneous order — it is no order at all.

In contrast to subject matter jurisdiction, "active jurisdiction" — pragmatically called the "jurisdiction to err"[2] — involves not the power of the court but the proper exercise of its

---

[2] *Pure Presbyterian Church of Wash.*, 296 Va. at 56-57; *Jones*, 293 Va. at 47; *Hicks ex rel. Hicks v. Mellis*, 275 Va. 213, 219 (2008); *Parrish v. Jessee*, 250 Va. 514, 521 (1995); *Farant Inv. Corp. v. Francis*, 138 Va. 417, 436 (1924); *see also Kelley v. Stamos*, 285 Va. 68, 75 (2013); *Singh v. Mooney*, 261 Va. 48, 51-52 (2001).

authority consistent with "settled principles of the unwritten law" or any applicable "mandate of the statute law." *Farant Inv. Corp. v. Francis*, 138 Va. 417, 427, 436 (1924) (citation omitted). This nomenclature entered our jurisprudence a century ago through the "excellent work" of Professor Lile, *id.* at 427, and its salience has not abated in modern times, *see, e.g.*, *Pure Presbyterian Church of Wash.*, 296 Va. at 49, 56. Simply stated, active jurisdiction requires a court with subject matter jurisdiction to adjudicate a case consistent with the law governing that adjudication. As our recent cases have emphasized, "[t]his distinction guards against the improper elevation of a court's failure 'to comply with the requirements for exercising its authority to the same level of gravity as a lack of subject matter jurisdiction.'" *Jones*, 293 Va. at 47 (quoting *Nelson v. Warden*, 262 Va. 276, 281 (2001)).

2.

The Constitution of Virginia vests courts with the "judicial power" to adjudicate classes of cases and controversies determined by the General Assembly. Va. Const. art. 6, § 1. Viewed correctly, subject matter jurisdiction focuses on the "*subject* of the case" not the "particular proceeding that may be one part of [the] case." *In re Commonwealth*, 278 Va. at 11 (emphasis added). Code § 17.1-513 grants circuit courts "original and general jurisdiction" over "criminal" cases "in which an appeal may be had to the Supreme Court." A Virginia court's "jurisdiction to revoke a convict's probation and suspension of sentence is part of [the] criminal process." *Green v. Commonwealth*, 263 Va. 191, 194 (2002); *see Richardson v. Commonwealth*, 131 Va. 802, 807-08 (1921).[3]

---

[3] A post-conviction revocation proceeding, however, "is not a stage of a criminal *prosecution*." *Johnson v. Commonwealth*, 296 Va. 266, 275 (2018) (emphasis added) (quoting *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973)); *see also Pierce v. Commonwealth*, 48 Va. App. 660, 668 (2006) (stating that "[w]hile a revocation hearing is a criminal proceeding, it 'is not a stage of a criminal prosecution'" (citation omitted)).

Several procedural statutes govern the proper use of a court's authority following the imposition of a criminal sentence. A trial court has the authority to "suspend [the] imposition of sentence or suspend the sentence in whole or part." Code § 19.2-303. In addition, a court "may place the defendant on probation under such conditions as the court shall determine." *Id.* Suspension and probation are "distinct but overlapping" concepts. *Collins v. Commonwealth*, 269 Va. 141, 145 (2005). A suspension of a criminal sentence is "either delay in the imposition of a sentence for [a] crime or the staying of execution of the sentence imposed," *Richardson*, 131 Va. at 808, and does not necessarily require the imposition of probation, *Collins*, 269 Va. at 145. Suspension and probation may include distinct conditions, but both carry a condition of good behavior, "whether expressly so stated or not," *Coffey v. Commonwealth*, 209 Va. 760, 763 (1969) (citation omitted). *See also Burnham v. Commonwealth*, Record No. 181096, 2019 WL 5607887, at *2 (Va. Oct. 31, 2019) ("Even when an order imposing a suspended sentence does not contain an express 'condition of good behavior, that condition is implicit in every such suspension . . . .'" (quoting *Marshall v. Commonwealth*, 202 Va. 217, 219 (1960))).

In pertinent part, Code § 19.2-306 imposes two time limitations on the revocation of a suspended sentence. The first time limitation in the statute states that a sentencing court "may revoke" a suspended sentence for any cause occurring "at any time within the probation period, or within the period of suspension fixed by the court." Code § 19.2-306(A). If neither period was fixed, the court may revoke a suspended sentence for any "cause the court deems sufficient that occurred within the maximum period for which the defendant might originally have been sentenced to be imprisoned." *Id.* The second time limitation contained in the statute states that a court

> may not conduct a hearing to revoke the suspension of sentence
> unless the court issues process to notify the accused or to compel

7

his appearance before the court within one year after the expiration of the period of probation or the period of suspension or, in the case of a failure to pay restitution, within three years after such expiration. If neither a probation period nor a period of suspension was fixed by the court, then the court shall issue process within one year after the expiration of the maximum period for which the defendant might originally have been sentenced to be incarcerated.

Code § 19.2-306(B).

As for the modification of probation, Code § 19.2-304 simply states that "[t]he court may subsequently increase or decrease the probation period and may revoke or modify any condition of probation, but only upon a hearing after reasonable notice." Under Cilwa's view, Code § 19.2-304 contains an implied time limitation that requires the court to increase probation *before* the probation period expires, and a trial court's subject matter jurisdiction over probation is rigidly dependent upon its compliance with this implied time limitation. If that were true, a defendant could not do exactly what Cilwa attempted to do in July 2009: negotiate an extension to the probation period and agree to an extension order being entered after the expiration of that probation period with the hope of receiving favorable treatment from the revocation court when it later addresses crimes that occurred *prior* to the initial expiration date.

We are skeptical of Cilwa's interpretation of Code § 19.2-304 to include an implied time limitation for modifying probation. "Statutes that permit the trial court to impose alternatives to incarceration, such as probation or conditionally suspended sentences, are highly remedial and should be liberally construed to provide trial courts valuable tools for rehabilitation of criminals." *Peyton v. Commonwealth*, 268 Va. 503, 508 (2004).[4] A liberal construction of Code

---

[4] "In order that the effective use of probation be not impaired it is important that those to whom it is granted shall know that its terms and conditions are to be strictly observed; and it is likewise important that the power of the court to revoke for breach of its terms and conditions be not restricted beyond the limitations required by the statutes." *Dyke v. Commonwealth*, 193 Va. 478, 484 (1952); *see also Grant v. Commonwealth*, 223 Va. 680, 684 (1982).

8

§ 19.2-304 favors giving a trial court the flexibility to consider and, if appropriate, to adopt an agreed-upon extension to a probation period if doing so would support the court's rehabilitation goals for the criminal and would uphold the court's equally important duty to protect the public from recidivist crime.

We need not pass judgment, however, on Cilwa's argument that Code § 19.2-304 precludes a court (absent a timely revocation event) from entering an agreed-upon order extending a probation period after the period expires. Even if the statute were to contain this implied time limitation, violating it would not deprive a court of its subject matter jurisdiction over the case. Code §§ 19.2-304 and 19.2-306 govern the procedures for the trial court's *exercise* of authority over suspended sentences, probation, and revocation proceedings. Neither statute *grants* a trial court categorical judicial power over criminal cases or their attendant proceedings, and thus, neither can reasonably be read to strip a trial court of subject matter jurisdiction if the court violates those procedures. Unless a procedural statute clearly states otherwise, "[t]he validity of a judgment based upon a challenge to the application of [such] a statute raises a question of trial error, and not a question of [subject matter] jurisdiction," *Pure Presbyterian Church of Wash.*, 296 Va. at 56 (citation omitted).

In short, no time limitation in either Code §§ 19.2-304 or 19.2-306 implicates a court's subject matter jurisdiction to enter uncontested orders extending probation periods before or after their expiration. As a result, the parties are free to extend these deadlines, with the trial court's concurrence, even after their expiration. Equally so, a probationer is free to advocate on direct appeal for strict compliance with the statutory time limitations in the absence of an agreement

9

between the parties.  What a defendant may not do, however, is rely upon these time limitations as a basis for a collateral attack on an earlier agreed-upon order.[5]

Cilwa points out that *Wilson v. Commonwealth*, 67 Va. App. 82 (2016), takes a different view.[6]  The Commonwealth agrees but urges that we reject *Wilson*'s reasoning because it "blurs the distinction between a trial court's active jurisdiction and subject matter jurisdiction, resulting in the erroneous holding that '[i]f the circuit court lacked "active" jurisdiction over [the defendant] when it extended his probation in its February 8, 2011 order,' the defendant could 'collaterally seek to void the 2011 probation order that extended the period of suspension.'"  Appellee's Br. at 20 (alterations in original) (quoting *Wilson*, 67 Va. App. at 93).  On this point, we too view *Wilson* as erroneous.  Defects in active jurisdiction can be waived, *see Jones*, 293 Va. at 47-48, and even if not waived, such defects are not subject to collateral attack, *see Hicks ex rel. Hicks v. Mellis*, 275 Va. 213, 219 (2008).[7]

---

[5] To hold otherwise would lead to wholly disproportionate results.  Consider a criminal defendant's claim that a trial court violated his Fourth Amendment rights, misapplied the *Miranda* doctrine, scheduled a trial in violation of his statutory or constitutional speedy trial rights, conducted a bench trial instead of a requested jury trial, or admitted evidence at trial in violation of his right of confrontation.  "None of these claims, even if conceded to be valid, renders the underlying judgment void ab initio.  Procedural default principles, including Rules 5:25 and 5A:18, still apply, as do traditional finality principles protecting judgments no longer within the trial court's active jurisdiction."  *Jones*, 293 Va. at 47-48.

[6] Cilwa argues that the "Court of Appeals ignored *Wilson*'s binding precedent" (secured by the interpanel-accord doctrine) "by not addressing whether the September 16, 2009 order was actually void."  Appellant's Br. at 16.  We view this criticism as misplaced.  The Court of Appeals found it unnecessary to address *Wilson* because the January 2010 order could be interpreted to operate on its own without any taint from the allegedly void-ab-initio September 2009 order.

[7] Exceptions to this general principle have been recognized in very limited categories of unlawful exercises of judicial authority that are "so palpable that [they] can be considered void ab initio," *Cabral v. Cabral*, 62 Va. App. 600, 608 & n.3 (2013) (collecting cases).  Cilwa's allegations that the September 2009 order violated Code §§ 19.2-304 and 19.2-306 fit within none of these exceptional situations.

## B. THE JANUARY 2010 ORDER

Cilwa concedes that the January 2010 order was a valid exercise of the trial court's jurisdiction, but she argues that it was ineffective to extend her probation because it refers to the terms of the allegedly void-ab-initio September 2009 order. The Court of Appeals rejected this argument because even if the September 2009 order were void ab initio, the "January 2010 order was in no way dependent upon the September 2009 order for its own jurisdictional validity, and the conditions accompanying the January 2010 order of probation were clear." *Cilwa v. Commonwealth*, Record No. 0687-15-4, 2018 WL 3115789, at *5 (Va. Ct. App. June 26, 2018) (unpublished). Without expressing any disagreement with the reasoning of the Court of Appeals, our holding makes it unnecessary for us to address the January 2010 order.

## C. THE CONTRACTUAL BAR

Cilwa argues, in the alternative, that she extended her probation by forming a contract with the trial court that terminated upon her fulfillment of certain conditions subsequent — namely, the completion of her substance-abuse-treatment program in January 2013. We disagree.

In suspending a sentence, a trial court "does not make a contract with the accused, but only extends to him the opportunity which the State affords him to repent and reform. It is the free gift of the Commonwealth, and not a contract to relieve him from the punishment which fits his crime." *Richardson*, 131 Va. at 810; *see also Burnham*, 2019 WL 5607887, at *2; *Marshall*, 202 Va. at 219; *Berry v. Commonwealth*, 200 Va. 495, 498 (1959) (observing that "probation [is] a matter of favor, not contract" (citation omitted)).

The September 2009 order indefinitely extended Cilwa's probation. Both Cilwa and the Commonwealth gave various reasons for jointly requesting an indefinite extension, including the

11

desire for "additional time on probation to complete residential substance abuse treatment and aftercare." J.A. at 21. But the court's order did not condition the indefinite extension, either explicitly or implicitly, on any of the parties' proffered reasons. The order imposed a term of indefinite probation "until further order by the Court," *id.*, thus specifically contemplating termination of probation by a subsequent court order. As the Court of Appeals observed, "[t]he stated *purpose* of the request for extension was to allow for [Cilwa's] completion of inpatient substance abuse treatment and the disposition of her pending felony charges, but the order clearly characterizes the *duration* of the extension as indefinite," and thus continuous, "*until further order of the court*." *Cilwa*, 2018 WL 3115789, at *5 (emphases in original).

## III.

Because the trial court acted within its subject matter jurisdiction when it entered the September 2009 order, Cilwa cannot collaterally attack that order as void ab initio. The trial court did not err by entering later revocation orders predicated on the September 2009 order, and the Court of Appeals did not err in affirming the judgment of the trial court. We therefore affirm the judgment of the Court of Appeals.

*Affirmed*.